**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**DERRICK A. NEELY,**

           **Plaintiff,**

     **v.**                                            **22-CV-228 (JLS) (HKS)**

**QBE INSURANCE CORPORATION,**

           **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

The Honorable John L. Sinatra referred this case to the undersigned for all pretrial matters and to hear and report upon dispositive motions pursuant to 28 U.S.C. §§ 636(b)(1)(A), (B) and (C). Dkt. 6.

Plaintiff Derrick A. Neely obtained a state-court judgment against Four Aces Bar and Grill for personal injuries sustained in an automobile collision. Plaintiff now seeks to enforce that judgment against Four Aces' insurer, Defendant QBE Insurance Corporation (Dkt. 1). Plaintiff seeks a declaration that the QBE Policy affords coverage for the underlying incident and that Defendant's disclaimer was invalid. Dkt. 1, at 8. Defendant moves for judgment on the pleadings (Dkt. 9). Plaintiff opposed (Dkt. 12) and Defendant replied (Dkt. 13). For the following reasons, the Court recommends that Defendant's motion for judgment on the pleadings be converted to a motion for summary judgment and that summary judgment be GRANTED in favor of Defendant.

**BACKGROUND**

**I.    THE UNDERLYING ACTION**

In November 2007, Neely and a passenger were injured in a motor vehicle collision with Shannon Melius. In October 2010, Neely filed a complaint in New York state court against Melius, Four Aces Bar and Grill, Greg Siwiec, and David Siwiec for the injuries he and the passenger sustained in the collision. Dkt. 1-4, at 3-12. Neely alleged that, prior to the collision, Melius had been working a shift as a bartender at Four Aces Bar and Grill, a restaurant in Buffalo owned and operated by Greg and David Siwiec. *Id.* at ¶¶ 11–14. According to Neely, Melius became "visibly intoxicated" due to overconsumption of alcoholic beverages, and restaurant employees continued to serve Melius alcohol despite her intoxication. *Id.* at ¶ 15. Melius then left the restaurant, drove while intoxicated, and caused the collision. *Id.* at ¶¶ 18–22, 25–27. Neely raised several different theories of liability against Four Aces, including negligent hiring, retention, training, and supervision, as well as a claim under New York's Dram Shop Act. *Id.* at 7–11. At the time of the underlying incident, Four Aces was the named insured on a commercial general liability policy issued by QBE. *See* Dkt. 1-3, at 173.

QBE received a copy of the underlying summons and complaint on February 24, 2011. Dkt. 17-2, at ¶ 11. Approximately one week later, QBE (through its claims administrator) sent a letter to Four Aces, indicating that it would not defend or indemnify it. *See* Dkt. 1-5, at 1. The letter states in relevant part:

> We are in receipt of a Summons and Complaint served upon you in the above captioned matter alleging Dram Shop.
>
> Upon thorough review of the above mentioned Commercial General Liability Policy with our company, I must inform you that this policy Does Not Include Liquor Liability Coverage.

> Therefore, We will not Defend and/or Indemnify you under the above mentioned policy regarding this lawsuit and Strongly Urge you to consult with your corporation's attorneys. This would be done at your own expense.

*Id.* In a follow-up letter, dated April 21, 2011, and addressed to Four Aces' attorney, QBE

(through its claims administrator) reiterated its denial of coverage:

> Specialty Insurance Agency is the Authorized Claims Administrator on behalf of QBE Insurance Corporation.
>
> We are in receipt of a copy of your email message dated March 9, 2011 addressed to Mike Cryan of Amherst Insurance Agency seeking coverage on behalf of your client David Siwiec as property owner in response to my Disclaimer of March 3, 2011.
>
> I have again carefully reviewed the Complaint and subject policy. The foundation of this claim is the alcohol consumption of the co-defendant bartender. Had it not been for her consumption, there would be no allegations of same. Again there is No liquor liability coverage with the subject policy and as such, QBE Insurance Company and Specialty Insurance maintain their Denial of Coverage accordingly.
>
> QBE Insurance Company and Specialty Insurance will not Defend and/or Indemnify your client under the above mentioned policy regarding this lawsuit.

Dkt. 1-6, at 1.

Neely's action proceeded to an arbitrator, who issued an award finding Four Aces

60% liable for a $250,000 damages award. Dkt. 1-7, at 3–5. In April 2018, the state

court confirmed the award and entered judgment against Four Aces only. *Id.* at 2.

## II.    PROCEDURAL HISTORY

In June 2019, Neely filed a complaint against QBE in New York state court,

alleging that QBE wrongfully disclaimed coverage and seeking to recover the judgment

against Four Aces pursuant to New York Insurance Law § 3420(a)(2). *See* Dkt. 1-8. In

August 2019, QBE removed the case to federal court. *See* Dkt. 1-10. The court

concluded that Neely had not met the preconditions to bring suit under section

3

3420(a)(2) and dismissed the case without prejudice. *See Neely v. QBE Ins. Corp.*, No. 19-CV-1020-JLS-HBS, 2020 WL 8083629 (W.D.N.Y. Oct. 23, 2020).

In March 2022, Neely filed this action against QBE, again seeking to recover the judgment he obtained against Four Aces in the underlying action. Dkt. 1. QBE moved for judgment on the pleadings. Dkt. 9. Neely opposed, and QBE replied. Dkts. 12, 13. On July 18, 2023, the Court notified the parties of its intent to convert QBE's motion for judgment on the pleadings to a motion for summary judgment and requested that the parties submit any relevant evidence. Dkt. 16, at 2. In particular, the Court directed the parties to submit

> affidavits or other admissible documentary evidence relating to the date on which Defendant first received notice of the underlying complaint and/or any other relevant information regarding what transpired between November 10, 2010, when the underlying summons and complaint were served upon Four Aces, and March 3, 2011, when Defendant issued its first disclaimer.

*Id.* QBE submitted a "Supplemental Statement of Material Facts" on August 1, 2023. Dkt. 17. Neely neither objected to nor responded to the Court's order. The Court therefore recommends that QBE's motion for judgment on the pleadings be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("[A] district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give sufficient notice to an opposing party and an opportunity for that party to respond.") (quotation marks omitted).

## LEGAL STANDARDS

### I.   SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "view the evidence in the light most favorable to the party against whom the motion was made and . . . draw all reasonable inferences in favor of that party." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). Thus, the court "should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party." *DeJesus v. Malloy*, 531 F. Supp. 3d 650, 657 (W.D.N.Y. 2021), *reconsideration denied,* 582 F. Supp. 3d 82 (W.D.N.Y. 2022).

"Demonstrating that such issues exist requires the nonmovant to 'do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. Gen. Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985). The "mere existence of a scintilla of evidence in support of the [non-movant's position] will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *McKinney*, 49 F.4th at 738 (citation omitted). Thus, "rather than merely 'deny the moving party's allegations in a general way,' the party opposing summary judgment 'must present competent evidence that creates a genuine issue of material fact.'" *Id.* (quoting *FEC v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002)).

## II.    N.Y. INS. LAW § 3420

N.Y. Ins. Law § 3420 "grants an injured party a right to sue the tortfeasor's insurer, but only under limited circumstances—the injured party must first obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment and await payment for 30 days." *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 354 (N.Y. 2004). Compliance with these requirements "is a condition precedent to a direct action against the insurance company." *Id.* Here, Neely has satisfied the requirements to bring this action pursuant to § 3420(a)(2), which QBE does not dispute. Neely, "by proceeding directly against defendant, does so as subrogee of the insured's rights and is subject to whatever rules of estoppel would apply to the insured." *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (N.Y. 1990).

<u>**DISCUSSION**</u>

## I.    THE LIQUOR LIABILITY EXCLUSION BARS COVERAGE

Defendant argues that the Liquor Liability Exclusion is unambiguous and bars coverage for all claims asserted in the underlying action because there is "no basis of liability that does not derive from or is independent of Four Aces serving alcohol to Melius." Dkt. 9-1, at 9. Plaintiff does not meaningfully dispute that the Liquor Liability Exclusion applies to the negligent hiring, retention, and supervision claim. According to Plaintiff, his claims "are not due solely to the alcohol consumption on the premises," but rather that "Melius was a known alcoholic, was not terminated by Four Aces, and was instead encouraged to continue to engage in behavior that put the general public at an unreasonable risk of harm." Dkt. 12, at 4. Plaintiff further argues that "the policy

provision at issue purports to exclude liquor liability coverage" but "does not have any exclusions relating to negligent hiring, retention, or supervision." Dkt. 12, at 12.

The QBE Policy contains the following Liquor Liability Exclusion:

**c. Liquor Liability**

"Bodily injury" or "property damage for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Dkt. 1-3, at 104.

### A.    <u>Duty to Defend and Indemnify</u>

Under New York Law, "the duty to defend is 'exceedingly broad' and more expansive than the duty to indemnify." *Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (citation omitted). The duty to defend an insured "is derived from the allegations of the complaint and the terms of the policy.*" BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (N.Y. 2007) (citation omitted). The New York Court of Appeals has held that "an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (N.Y. 1991). Thus, to be relieved of its duty to defend, "the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other

7

reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (N.Y. 1997).

The duty to indemnify, however, "is determined by the actual basis for the insured's liability to a third person, and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy." *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 150 (2d Cir. 2016). But because "the duty to indemnify is narrower than the duty to defend, it 'is unnecessary to engage in a separate analysis' of that claim." *MIC Gen. Ins. Co. v. Allen*, 697 F. App'x 717, 720 (2d Cir. 2017) (summary order) (quoting *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990)).

The insured "has the initial burden of proving that the damage was the result of an 'accident' or 'occurrence' to establish coverage where it would not otherwise exist." *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (N.Y. 2002). Once coverage is established, "the insurer bears the burden of proving that an exclusion applies." *Id.* To "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993).

### B.    Dram Shop Claim

The Liquor Liability Exclusion unquestionably applies to Plaintiff's Dram Shop claim in the underlying action. The Liquor Liability Exclusion provides, in part, that the

insurance policy does not apply to bodily injury "for which any insured may be held liable by reason of . . . any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages." Dkt. 1, at 104. The Dram Shop Act imposes liability against "any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication[,]" N.Y. Gen. Oblig. Law § 11-101(1), and therefore clearly "relat[es] to the sale, gift, distribution, or use of alcoholic beverages," Dkt. 1, at 104. Accordingly, Plaintiff's Dram Shop claim in the underlying action is excluded from coverage under the Liquor Liability Exclusion. *See, e.g., Handlebar Inc. v. Utica First Ins. Co.*, 290 A.D.2d 633, 635 (3d Dep't 2002) (holding that the injured party's "allegations concerning a violation of the Dram Shop Act—that alcoholic beverages were continually served to [the tortfeasor] while he was visibly intoxicated—fall squarely within the Dram Shop exclusion relieving the insurer of any duty to defend or indemnify"); *Ma-Do Bars, Inc. v. Penn-Am. Ins. Co.*, No. 1:09-CV-901 GLS DRH, 2010 WL 5138475, at *6 (N.D.N.Y. Dec. 9, 2010) ("[T]he court is certain that the liquor liability exclusion covers the seventh cause of action, which alleges that Ma–Do's provision of alcoholic beverages to Shine contributed to his intoxication, caused his injuries, and violated New York State law.").

### C.   Negligent Hiring, Retention, and Supervision Claim

Plaintiff's negligent hiring, retention, and supervision claim sought to recover for the same bodily injuries as his Dram Shop claim—those suffered in the automobile collision with Melius. *See* Dkt. 1-4. Because Four Aces "may be held liable"—and indeed was held liable—for those bodily injuries under the Dram Shop claim, all claims seeking to recover for those same bodily injuries are likewise excluded under the Liquor

Liability Exclusion. *See State Auto. Mut. Ins. Co. v. Lucchesi*, 563 F. App'x 186, 191 (3d Cir. 2014) ("[Plaintiff]'s injury is allegedly one for which the . . . Defendants 'may be held liable . . . by reason' of serving him too much alcohol. Under the language of the policy, *all* claims seeking damages for that injury are excluded from coverage.") (citation omitted).

In any event, the negligent hiring, retention, and supervision claim sought to, and did, hold Four Aces liable for bodily injuries "by reason of . . . contributing to the intoxication of [Melius]," and therefore the Liquor Liability Exclusion bars coverage. Courts "have found similar Liquor Liability exclusions unambiguous and excluded coverage where the allegations were based on the insured providing alcohol to the [tortfeasor]."[1] *Nautilus Ins. Co. v. 93 Lounge Inc.*, No. 14CV01029KAMST, 2017 WL 1207528, at *6 (E.D.N.Y. Mar. 31, 2017) (finding similar liquor liability exclusion "unambiguous because an 'ordinary business man' would have reasonably believed that claims arising out of furnishing alcohol to a person, thereby contributing to the person's intoxication, would be barred from coverage"); *accord Capitol Specialty Ins. Corp. v. PJD Ent. of Worcester, Inc.*, 126 F. Supp. 3d 176, 182 (D. Mass. 2015) (finding similar liquor liability exclusion "broad and clear enough to exclude coverage for common law negligence actions, so long as the insured's underlying conduct involves contributing to a person's intoxication or furnishing alcohol to minors or others under the influence"). The "vast majority of cases discussing the scope or applicability of a liquor liability

---

[1] Here, the Court finds that the language of the Liquor Liability Exclusion is clear and unambiguous. *See, e.g., Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 263 (D. Conn. 1998) (finding language of identical exclusion clear and unambiguous); *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1178 (7th Cir. 2013) (same).

exclusion have held that, where other negligence claims are so inextricably intertwined with the negligent provision of alcohol, coverage of those claims is precluded under a liquor liability exclusion."[2] *Colony Ins. Co. v. Events Plus, Inc.*, 585 F. Supp. 2d 1148, 1154 (D. Ariz. 2008) (collecting cases) (holding that plaintiff's "allegations of secondary

---

[2] Under New York law, to determine whether claims are based on or arise out of excluded conduct, the court "examin[es] whether the asserted claim could succeed but for the excluded conduct." *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018) (summary order). Here, the QBE Policy does not provide coverage for "bodily injury for which an insured may be held liable *by reason of* . . . causing or contributing to the intoxication of any person." Dkt. 1-4, at 104 (emphasis added). The phrase "by reason of" has been defined as "[b]ecause of," Black's Law Dictionary 201 (6th ed. 1990), which "has been held to mandate causation, as opposed to the broader term 'arising out of,' which merely indicates some causal connection short of proximate cause," *Philadelphia Indem. Ins. Co. v. Hamic*, No. 8:12-CV-829-T-26EAJ, 2012 WL 3835088, at *5 (M.D. Fla. Sept. 4, 2012), *on reconsideration*, No. 8:12-CV-829-T-26EAJ, 2012 WL 5055558 (M.D. Fla. Oct. 18, 2012). Thus, the "causal connection implied by the phrase 'by reason of' is normally that of proximate causation." *McNeilab, Inc. v. N. River Ins. Co.*, 645 F. Supp. 525, 535 (D.N.J. 1986), *aff'd*, 831 F.2d 287 (3d Cir. 1987); *see also Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 324 (N.Y. 2017) (holding that phrase "caused, in whole or in part" requires proximate causation, not merely the "but for" causation and stating that "'arising out of' is not the functional equivalent of 'proximately caused by'"). The language of the Liquor Liability Exclusion here, however, requires a causal connection between the insured's *liability* for bodily injury—not the bodily injury itself—and the excluded conduct. There is no doubt that Four Aces contributing to the intoxication of Melius was a proximate cause of its liability for the negligent hiring, retention, and supervision claim. *See Capitol Specialty Ins. Corp.*, 126 F. Supp. 3d at 183 ("The exclusion applies because there is a direct causal relationship between Centerfolds' liability and their conduct of 'causing or contributing to the intoxication' of Higgins."). Moreover, even if the excluded conduct must be the proximate cause of the bodily injury itself, Defendant has demonstrated that it was. *See Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 983 (Ind. Ct. App. 2006) (negligent hiring, training, and retention claims excluded from coverage because "the immediate and efficient cause of the injuries was drunk driving precipitated by the negligent service of alcohol"); Dkt. 1-4, at ¶ 30 (alleging that defendants "produced the intoxication of [Melius] which was the proximate, direct, as well as remote cause of the said automobile accident, which . . . resulted in the bodily injury and harm to the Plaintiffs"); *see also Netherlands Ins. Co.*, 737 F.3d at 1178 ("Even if there might be some difference between 'arising out of' and 'by reason of' in some instances, [plaintiff] has failed to articulate how the phrase 'by reason of' would limit the scope of the Liquor Liability Exclusion in this case.").

negligence were not sufficiently distinct or independent from the negligent provision of alcohol but were, in fact, inextricably intertwined with those claims"); *see Netherlands Ins. Co.*, 737 F.3d at 1180 (holding that liquor liability exclusion barred coverage for secondary negligence claims that were "not sufficiently independent from the allegations that [the insured] caused or contributed to the intoxication of any person"); *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1090 (D. Nev. 1999) (finding that the "Liquor Liability Exclusion bars coverage for those claims which have a close nexus to the sale or service of liquor and/or the causing or contributing to the intoxication of any person"); *Ebert v. Illinois Cas. Co.*, 188 N.E.3d 858, 870 (Ind. 2022) (holding that liquor liability exclusion barred coverage when the "efficient and predominant cause of the [injured party's] injuries was drunk driving precipitated by the negligent service of alcohol"); *Scottsdale Ins. Co. v. Lankford*, No. CIV.A. 07C-06-254RRC, 2007 WL 4150212, at *1 (Del. Super. Ct. Nov. 21, 2007), *aff'd*, 947 A.2d 1121 (Del. 2008) (holding that liquor liability exclusion barred coverage for various claims of negligence that were "fundamentally premised" on allegations that the insured was "negligent in 'causing' or 'contributing' to [the tortfeasor's] intoxication").

In the underlying complaint, Plaintiff did not plead any additional factual allegations to support his negligent hiring, supervision, and retention claim, but rather re-alleged his prior allegations.[3] Dkt. 1-4, at ¶ 52. The injuries being sued upon in the

---

[3] Neely's argument that the Liquor Liability Exclusion does not apply because it "does not have any exclusions relating to negligent hiring, retention, or supervision" lacks merit. Under New York law, "it is the act giving rise to liability—and not the theory of liability alleged—that is determinative of whether an insurance policy exclusion applies." *U.S. Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 500, 504 (W.D.N.Y. 2012). Thus, "[a] party's characterization of the causes of action alleged in a complaint are not controlling"—rather, the court "seek[s] to determine the nature of the claims based upon

underlying action were those incurred in the automobile accident. Plaintiff alleged that the accident "occurred directly as a result of the intoxication of [Melius], which intoxication resulted solely from the intoxicating and alcoholic beverages sold and/or served to her by" Four Aces. *Id.* at ¶ 27. Accordingly, Plaintiff alleged that the "automobile accident was directly caused by the unlawful sale and/or gift of alcoholic beverages by the Defendants." *Id.* at ¶ 25. Under these allegations, there is "no other bas[is] for liability that does not derive from, arise out of, or is independent of [Four Aces'] serving alcohol to [Melius], thereby contributing to [Melius's] intoxication." *Nautilus Ins. Co.*, 2017 WL 1207528, at *6. The allegations most pertinent to these claims—that Four Aces encouraged and expected its employees to drink during and after their shifts, *see* Dkt. 1-4, at ¶¶ 44–45—expressly reference and depend on Four Aces contributing to the intoxication of Melius, which is expressly excluded from coverage under the Liquor Liability Exclusion. *See Transportation Ins. Co v. Heathland Hosp. Grp. LLC*, 783 F. App'x 186, 190–91 (3d Cir. 2019) ("[A]ll of [defendant's] allegedly negligent acts and/or omissions are closely linked to [defendant's] negligent furnishing of alcohol to [the tortfeasor] – conduct that is plainly covered by the exclusions."); *Nautilus Ins. Co.*, 2017 WL 1207528, at *7 (exclusion applied where "the allegations in the Underlying Actions ar[o]se from [defendant] allegedly serving alcohol

---

the facts alleged and not the conclusions which the pleader draws therefrom." *Curtis v. Nutmeg Ins. Co.*, 204 A.D.2d 833, 834 (3d Dep't 1994) (quotation marks and citations omitted); *see Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 352 (N.Y. 1996) ("While the insured's negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the insured's right to coverage based on the language of the contract between him and the insurer."); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (N.Y. 1992) ("[T]he analysis depends on the facts which are pleaded, not the conclusory assertions.").

to [the tortfeasor], leading to [the tortfeasor] driving while intoxicated which caused the Accident that injured [the injured parties]"); *Burdick*, 196 A.D.2d at 670–71 (allegations that underlying defendant "was allegedly negligent for, *inter alia,* not properly training her employees in the 'appropriate manner of serving alcoholic beverages', by serving [the tortfeasor] substantial quantities of alcohol while in an intoxicated state, by failing to 'control' [the tortfeasor] and by failing to 'perceive the dangerous condition created' by the presence of [the tortfeasor] and his 'continuous consumption of alcoholic beverages'" all "directly or indirectly arose out of the [underlying defendant's] business of selling and serving alcoholic beverages" and thus were excluded under the liquor liability exclusion).[4]

---

[4] In *Dryden Mut. Ins. Co. v. Harr*, the underlying plaintiff alleged an intentional assault claim against the alleged assault perpetrator and negligence claims against the bar and its owner, "alleging negligent serving of alcoholic beverages to [the alleged assault perpetrator] when he was in an obviously intoxicated condition and further alleging negligent failure to adequately supervise [the alleged assault perpetrator] and protect [the underlying plaintiff] from harm by [the alleged assault perpetrator]." 247 A.D.2d 684, 685 (3d Dep't 1998). The court held that the allegations that the bar and its owner "were negligent in failing 'to properly supervise, manage and operate' the establishment, and in failing to afford [the underlying plaintiff] 'protection from the unlawful acts of another patron'" were "at least facially distinct from those relating to the service of alcoholic beverages, and thus cannot be said as a matter of law to fall within the policy exclusion." *Id.* at 686. Distinguishing the case from *Burdick*, the court noted that these allegations "[i]mplicated . . . the establishment's duty to protect its patrons while on its premises." *Id.*; *see id.* at 687 (stating that such "liability may be imposed *only for injuries that occurred on defendant's property, or in an area under defendant's control,* where defendant had the opportunity to supervise the intoxicated guest) (citations omitted); *cf. Amherst & Clarence Ins. Co. v. Cazenovia Tavern, Inc.*, 90 A.D.2d 631, 632 (3d Dep't 1982) ("There is no allegation that the accident in question occurred on the premises of Cazenovia Tavern or that any employee of Cazenovia Tavern was present at the scene of the accident."), *rev'd as moot*, 59 N.Y.2d 983 (N.Y. 1983); *Burdick*, 196 A.D.2d at 688 (defendant spent several hours drinking alcoholic beverages at the bar, and then drove home and fatally shot the victim). Here, the facts are analogous to *Burdick* because the automobile accident did not occur on the premises of Four Aces, or in an area under its control. While Melius was present, she was not acting within the scope of her employment while driving home from Four Aces, and therefore Four Aces cannot be

The underlying complaint "does not contain a single allegation of tortious conduct that is divorced from the serving of alcohol [or contributing to the intoxication of Melius], and the [c]omplaint does not assert any claim for damages independent of the injuries caused by [Melius] in h[er] intoxicated state." *Colony Ins. Co.*, 585 F. Supp. 2d at 1155. Plaintiff's negligent hiring, supervision, and retention claim is "nothing more than rephrasing[], or artful pleading[] that [is] not wholly independent from [Four Aces'] furnishing of alcohol." *Netherlands Ins. Co.*, 737 F.3d at 1180; *see Hamburg v. 14,000 Siblings, Inc.*, No. CIV. A. 97-7951, 1998 WL 559783, at *2 (E.D. Pa. Aug. 28, 1998) ("[D]espite a claim of 'general negligence,' the sole basis for liability against the insured is the serving of alcoholic beverages.").

In sum, the Liquor Liability Exclusion unambiguously excludes coverage for all Neely's claims in the underlying action. Defendant has met its burden of "demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and . . . are subject to no other interpretation." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 116 (2d Cir. 1995). Accordingly, because Neely's "underlying tort claims fall plainly within the exclusion provision, [QBE] has no duty to defend or indemnify [Four Aces] on those claims."[5] *Id.*; *see Logan's Silo Sales &*

---

held vicariously liable for her negligence. *See Lundberg v. State*, 25 N.Y.2d 467, 471 (N.Y. 1969) ("As a general rule, an employee driving to and from work is not acting in the scope of his employment."); *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016) ("Under New York law, it is clear that, as a general rule, an employee driving to and from work is not acting in the scope of his employment, because although such activity is work motivated, the element of control is lacking.") (quotation marks and citation omitted).

[5] The arbitrator's findings confirm that Four Aces was held liable for Neely's injuries by reason of contributing to the intoxication of Melius. Plaintiff notes that the arbitrator found that "[t]he negligent hiring and retention claim appears to be meritorious and that is an independent basis other than potential Dram Shop liability for [Melius's] actions."

*Serv., Inc. v. Nationwide Mut. Fire Ins. Co.*, 185 A.D.2d 651, 651 (4th Dep't 1992) ("Because the policy excludes coverage of the accident giving rise to the underlying action, defendant has no duty to defend or indemnify.").

## II.    DEFENDANT PROPERLY DISCLAIMED COVERAGE UNDER § 3420(d)(2)

Although the Court concludes that Liquor Liability Exclusion unambiguously excludes coverage for Plaintiff's claims in the underlying action, to rely on that exclusion, Defendant must have properly disclaimed coverage. New York law requires an insurer disclaiming coverage to "give written notice as soon as is reasonably possible . . . to the insured and the injured person or any other claimant." N.Y. Ins. Law § 3420(d)(2). This disclaimer "is necessary when denial of coverage is based on a policy exclusion without which the claim would be covered." *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188–89 (N.Y. 2000). Failure to comply with section 3420(d) "precludes denial of coverage based on a policy exclusion." *Id.* at 189; *see also Maple Grove Corp. v. Colony Ins. Co.*, No. 10-CV-00942S F, 2012 WL 4049618, at *7 (W.D.N.Y. Aug. 15, 2012) ("[E]ven if the complaint's allegations establish that an insurance exclusion applies, failure to timely disclaim coverage based on the exclusion

---

Dkt. 12, at 4 (quoting Dkt. 1-7, at 5). But Plaintiff fails to note that the arbitrator also stated that "[i]t is hard to believe that allowing employees to drink on the job and promoting that activity (even encouraging it) is independent of any potential dram shop liability for allegedly furnishing the alcoholic beverages." Dkt. 1-7, at 5. Indeed, the arbitrator found that "the intoxication . . . of Melius was both brought on and encouraged by the employment practices of Mr. Siwiec and the operation of Four Aces[.]" Dkt. 1-7, at 5. Four Aces' liability for negligent hiring, supervision, and retention was therefore directly premised on Four Aces "providing the circumstances and employment policies of encouraging [Melius] and other employees to 'drink' to encourage patrons to do the same." *Id.*

renders the exclusion inapplicable."), *report and recommendation adopted*, No. 10-CV-00942S F, 2012 WL 4086718 (W.D.N.Y. Sept. 11, 2012).

A.    **Adequacy of Disclaimer**

Section 3420(d)(2) "is intended to ensure clear notice to insured parties of the precise exclusion that the insurer invokes." *Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 664 (2d Cir. 2013) (summary order). The notice of disclaimer "must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated." *Gen. Acc. Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 864 (N.Y. 1979). Absent such specific notice, "a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully." *Id*. But even "where disclaimer letters have misquoted or partially omitted the language of an exclusion in a policy, New York courts have held that the disclaimer remains valid as long as it 'identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose.'" *Atl. Cas. Ins. Co.*, 548 F. App'x at 664 (quoting *Adams v. Perry's Place,* 168 A.D.2d 932, 932 (4th Dep't 1990)); *see Cnty. of Niagara v. Liberty Mut. Ins. Co.*, No. 14-CV-737-FPG, 2020 WL 597168, at *3 (W.D.N.Y. Feb. 7, 2020) (disclaimer that "expressly identified and disclaimed coverage" under relevant exclusion "apprised insured with a 'high degree of specificity' of the grounds on which disclaimer was predicated"), *aff'd*, 839 F. App'x 581 (2d Cir. 2020).

The issue here is whether the disclaimer sent on March 3, 2011, was sufficiently specific to effectively disclaim coverage for the negligent hiring, supervision, and retention claim. Plaintiff argues that Defendant's disclaimer lacked the "high degree of

specificity" required to effectively disclaim coverage under an exclusion. Dkt. 12, at 9–

12. Plaintiff emphasizes that the disclaimer "makes no mention of the [negligent hiring,

supervision, or retention claim] against Four Aces" in the underlying action and further

lacks "reference to any policy documents, coverages, endorsements, or exclusions."

Dkt. 12, at 9, 11. Defendant argues that its denial "was sufficiently precise to comply

with Insurance Law § 3420(d)(2) and provided notice of the 'specific ground' on which

[QBE] denied coverage." Dkt. 9-1, at 14.

While New York courts "have found disclaimers need not be perfect, to be valid, a

disclaimer must identify 'the applicable policy exclusion and set forth the factual basis

for the insurer's position that the claim fell within a policy exclusion with sufficient

specificity to satisfy the statutory mandate and purpose.'" *Citizens Ins. Co. of Am. v.

Risen Foods, LLC*, No. 614CV493BKSATB, 2016 WL 11784928, at *13 (N.D.N.Y. Nov.

23, 2016) (quoting *Adams*, 168 A.D.2d at 932 (disclaimer misquoted language)). For

example, in *Realm Nat. Ins. Co. v. Hermitage Ins. Co.*, the First Department held that

the disclaimer, "which clearly cited the relied upon exclusion, promptly apprised the

claimant with a high degree of specificity of the grounds upon which the disclaimer was

predicated" and that "[t]he disclaimer was not rendered ineffective by [the insurer]'s

quotation of only part of the relevant exclusion, especially since the claim of

ineffectiveness [was] being raised not by the insured but by a coinsurer seeking

contribution." 8 A.D.3d 110, 111 (1st Dep't 2004).

Here, the Court recognizes that Defendant's March 3, 2011, disclaimer did not

merely "misquote or partially omit[ ] the language" of the Liquor Liability Exclusion, it

entirely omitted the language of the exclusion. *See* Dkt. 1-5, at 1. The disclaimer did,

however, explicitly state that the policy "Does Not Include Liquor Liability Coverage," and thus identified the applicable policy provision—the Liquor Liability Exclusion. *Id.* The question then is whether the disclaimer "*set forth the factual basis* for [QBE's] position that the claim fell within [the Liquor Liability Exclusion] with sufficient specificity to satisfy the statutory mandate and purpose." *Adams,* 168 A.D.2d 932 (emphasis added). The disclaimer states that Defendant received the complaint from the underlying action "alleging Dram Shop" and that the policy "Does Not Include Liquor Liability Coverage." Dkt. 1-5, at 1. The factual basis for denying coverage was that Defendant had reviewed the complaint which "alleg[ed] Dram Shop," and therefore no coverage existed because the policy "Does Not Include Liquor Liability Coverage." *Id.* While "the notice is hardly an example of excellence, nonetheless it was promptly served and, though the policy exclusion was not properly identified by number, it did apprise the insured that the basis for the disclaimer"—that the complaint alleged Dram Shop—"and, as a consequence, fell within [the Liquor Liability exclusion] in the policy."[6] *John v. Centennial Ins. Co.*, 91

---

[6] Defendant's second disclaimer, sent on April 21, 2011, reiterated its denial of coverage and provided more detail for the factual basis for its denial.

> I have again carefully reviewed the Complaint and subject policy. The foundation of this claim is the alcohol consumption of the co-defendant bartender. Had it not been for her consumption, there would be no allegations of same. Again there is No liquor liability coverage with the subject policy and as such, QBE Insurance Company and Specialty Insurance maintain their Denial of Coverage accordingly.

Dkt. 1-6, at 1. The Court may therefore consider Defendant's second disclaimer in determining whether it disclaimed coverage with sufficient specificity. *See Abreu v. Chiung Huang*, 300 A.D.2d 420, 421 (2d Dep't 2002) (holding that insurer was "not limited to disclaiming coverage based upon the facts contained in its first notice of disclaimer" when its "second disclaimer letter set forth additional facts to support its initial disclaimer on the ground of untimely notice, and did not advance a new ground upon which coverage [was] denied").

A.D.2d 1104, 1105 (3d Dep't 1983) (disclaimer "apprise[d] insured that the basis for the disclaimer was that at the time of the accident the watercraft was being propelled by an outboard engine the capacity of which exceeded 50 horsepower").

Plaintiff emphasizes that the disclaimer does not specifically mention the negligent hiring, retention, and supervision claim. The disclaimer does, however, explicitly state that "[QBE] will not Defend and/or Indemnify you under the above mentioned policy *regarding this lawsuit* and Strongly Urge you to consult with your corporation's attorneys." Dkt. 1-5, at 1 (emphasis added). Moreover, Plaintiff's negligent hiring, retention, and supervision claim in the underlying action was directly premised on the same factual allegations as his Dram Shop claim. *See* Dkt. 1-4, at ¶ 52 (repeating and re-alleging prior allegations); *see also id.* at ¶¶ 44, 45 (alleging that it was "custom and/or practice" for Four Aces "to encourage and/or require [Melius] to accept and consume alcoholic beverages from patrons during/after [her] work shift" and "offer and/or provide [Melius] with alcoholic beverages during and/or after [her] work shift").

Keeping in mind that the section 3420(d)(2) "is intended to ensure clear notice to insured parties of the precise exclusion that the insurer invokes," the Court concludes that the disclaimer "identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose." *Atl. Cas. Ins. Co.*, 548 F. App'x at 664 (citations omitted). The purpose of the statute "is to protect the insured and other interested parties from being prejudiced by a belated denial of coverage, and it was not intended to be a technical trap that would allow interested parties to obtain more than the coverage contracted for under the policy." *Tower Ins. Co. of New York v. United*

*Founders Ltd.*, 126 A.D.3d 467, 467 (1st Dep't 2015) (quotation mark and citation omitted).

This is not a case where the insurer failed to identify the applicable policy exclusion or failed to explicitly disclaim coverage. *Cf. Adames v. Nationwide Mut. Fire Ins. Co.*, 55 A.D.3d 513, 515 (2d Dep't 2008) ("The homeowners policy's exclusions . . . upon which [the insurer] now relies, were not mentioned in [the insurer's] disclaimer letter, and thus have been waived."); *Philadelphia Indem. Ins. Co. v. Intrepid Grp., LLC*, No. 16-CV-7928 (JGK), 2018 WL 1517199, at *8 (S.D.N.Y. Mar. 26, 2018) (holding that insurer's letters "did not expressly disclaim coverage under the Insurance Policy" when "[n]either letter state[d] unequivocally that [the insurer] denied Commercial and General Liability insurance coverage pursuant to the Abuse or Molestation Exclusion for [the underlying plaintiff's] lawsuits"). Nor is this a case where the insured "could not have been expected to know from the language in the letter why coverage was being disclaimed under [the liquor liability exclusion]." *Bahnuk v. Countryway Ins. Co.*, 214 A.D.3d 1218, 1220 (3d Dep't 2023) (insurer's disclaimer referenced exclusion based on the property not qualifying as an "insured location," but failed to provide any additional information as to why the property did not satisfy that definition, and therefore the insured "could not have been expected to know from the language in the letter why coverage was being disclaimed under this broad term" when the term "insured location" carried eight distinct definitions). Rather, Defendant identified the Liquor Liability Exclusion and unambiguously informed its insured that it would not defend or indemnify them under the policy because the underlying complaint alleged dram shop. *See Raner v. Sec. Mut. Ins. Co.*, 102 A.D.3d 485, 486 (1st Dep't 2013) ("Defendant insurer satisfied

its duty to disclaim specifically by asserting the applicable policy sections on which it relied.") (citations omitted). The disclaimer "thus clearly identifies the conduct excluded, the provision of the policy under which it is excluded, and that the coverage that is disclaimed." *Century Sur. Co. v. Whispers Inn Lounge, Inc.*, No. 13 CIV. 9049 (LGS), 2016 WL 590231, at *3 (S.D.N.Y. Feb. 10, 2016). Accordingly, Defendant's disclaimer was sufficiently specific to disclaim coverage for all claims in the underlying action, including the negligent hiring, retention, and supervision claim.

### B.    Timeliness of Disclaimer

Defendant maintains that it first received a copy of the underlying complaint on February 24, 2011. Dkt. 9-1, at 2. Plaintiff argues that "no proof has been provided that substantiates this being the date which [QBE] received the [underlying] Summons and Complaint." Dkt. 12, at 8. Plaintiff further argues that there is "no indication" regarding whether "QBE was apprised of the underlying incident before allegedly obtaining a copy of the underlying Summons and Complaint in February of 2011." *Id*. To support its contention that it first received the underlying summons and complaint on February 24, 2011, Defendant directs the Court to Plaintiff's admission in a prior related case. Dkt. 17, at ¶¶ 1–2.

A judicial admission is "a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020). To constitute a judicial admission, "the statement must be one of fact—a legal conclusion does not suffice." *Id*. Moreover, "a statement must 'have

sufficient formality or conclusiveness to be a judicial admission.'" *Id.* (quoting *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965)).

While the Second Circuit "has not addressed whether judicial admissions may be binding in subsequent actions, 'the general rule seems to be that a judicial admission only binds the party that makes it in the action in which it is made, not in separate and subsequent cases.'" *Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Cooperation, Pension & Welfare Funds v. Rodrigue*, No. 13-CV-5760(JS)(SIL), 2017 WL 1180513, at *10 (E.D.N.Y. Mar. 29, 2017) (quoting *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015)). But the Court "may still consider judicial admissions made in one action as evidence in a different proceeding." *Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, No. 15-CV-7505, 2016 WL 6561548, at *4 (S.D.N.Y. Nov. 3, 2016); *accord In re 45 John Lofts, LLC*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) ("Judicial admissions are only binding in the cases in which they are made, and only constitute evidence to be considered in subsequent cases."); *Hausler*, 127 F. Supp. 3d at 37 ("[A] court may [still] consider a judicial admission as evidence in another case.") (citation omitted); *cf. United States v. GAF Corp.*, 928 F.2d 1253, 1259–60 (2d Cir. 1991) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extra-judicial admission made by a party or his agent. . . . If the agent made the admission without adequate information, that goes to its weight, not to its admissibility."). And "[w]here the two actions are related, courts have treated the admissions as strong, if not conclusive,

23

evidence of the admitted fact." *Amtrust N. Am., Inc.*, 2016 WL 6561548, at *4. Such evidence "may, however, be contradicted by other evidence when presented." *Hausler*, 127 F. Supp. 3d at 37.

In Plaintiff's prior lawsuit against Defendant, Plaintiff admitted that "[a]fter the Underlying Complaint was served on Four Aces, a copy was provided to QBE on February 24, 2011." Dkt. 17-2, at ¶ 11. Here, Plaintiff argues that there is no proof to substantiate that Defendant received the underlying complaint on February 24, 2011. But the Court may consider Plaintiff's prior judicial admission as evidence. Plaintiff offers no evidence to contradict this, but instead merely speculates that Defendant may have received the underlying complaint on an earlier date. That is insufficient to create a genuine dispute of material fact, and the Court therefore finds Plaintiff's prior admission sufficient to establish that Defendant received the underlying complaint on February 24, 2011.[7]

The issue therefore is whether the disclaimer that Defendant sent on March 3, 2011—approximately one week after QBE received notice of the underlying complaint— was timely as a matter of law. The "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 68–69 (N.Y. 2003) (citation omitted). While the New York Court of Appeals "ha[s]

---

[7] The Court finds this evidence sufficient to establish that February 24, 2011, is the date on which Defendant "first learned of the ground for disclaimer." *Those Certain Underwriters at Lloyds, London v. Gray*, 49 A.D.3d 1, 8 (1st Dep't 2007). Despite this Court's request for additional evidence, Plaintiff has not submitted any evidence to demonstrate that QBE learned of the underlying incident or action before such date. Nor does Plaintiff contend that he provided notice to QBE himself.

declined to provide a 'fixed yardstick' against which to measure reasonableness of a delay in disclaiming coverage," it has said that "timeliness almost always presents a factual question, requiring an assessment of all relevant circumstances surrounding a particular disclaimer." *Cont'l Cas. Co. v. Stradford*, 11 N.Y.3d 443, 449 (N.Y. 2008) (citations omitted).

But "although 'cases in which the reasonableness of an insurer's delay may be decided as a matter of law are exceptional,' courts have adopted a rule of thumb that 'disclaimers made within 30 days of notice are treated as timely, whereas disclaimers beyond the 30-day point are generally treated as untimely' unless the insurer establishes a suitable justification[.]" *United Specialty Ins. Co. v. Premier Contracting of New York, Inc.*, 375 F. Supp. 3d 389, 398–99 (S.D.N.Y. 2019) (citations omitted). This practice does not, however, "represent a 'bright-line rule,' such that a one-month delay is reasonable even in the absence of evidence that the insurer conducted any investigation at all." *Id.* (citations omitted) (quoting *Erie Painting & Maint., Inc. v. Ill. Union Ins. Co.*, 876 F.Supp.2d 222, 231 (W.D.N.Y. 2012)).

Where "the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage, but the insurer also has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim[.]" *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004) (quotation marks and citations omitted); *see Lehigh Const. Grp., Inc. v. Lexington Ins. Co.*, 70 A.D.3d 1430, 1432 (4th Dep't 2010) (disclaimer timely as a matter of law where the insurer "conducted its investigation of the matter and issued its disclaimer within four

weeks of its first notice of [the injured party's] accident and the underlying action"). An insurer "who delays in giving written notice of disclaimer bears the burden of justifying the delay." *Jetco Contracting Corp.*, 1 N.Y.3d at 69; *see State Farm v. Clift*, 249 A.D.2d 800, 801–02 (3d Dep't 1998) (possible delay of 25 days presented a question of fact because the affidavit submitted by the insurer detailing its investigative efforts, although falling short of establishing the insurer's entitlement to judgment as a matter of law, was sufficient to defeat defendants' motion for summary judgment dismissing the complaint). Accordingly, where the insurer's delay is either unexplained or unexcused, the New York Court of Appeals has held that a delay of 48 days or more is unreasonable as a matter of law. *See Jetco Contracting Corp.*, 1 N.Y.3d at 70 (unexcused delay of 48 days is unreasonable as a matter of law); *Hartford Ins. Co. v. Nassau Cnty.*, 46 N.Y.2d 1028, 1030 (N.Y. 1979) ("[W]here there is absolutely no explanation for the delay provided by the insurer, a delay of two months is, as a matter of law, unreasonable.").

But where "the justification for disclaimer is 'readily ascertainable from the face of the complaint in the underlying action' or 'all relevant facts supporting . . . a disclaimer [are] immediately apparent . . . upon . . . receipt of notice of the accident,' . . . a disclaimer must be made rapidly." *Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*, 22 N.Y.3d 571, 576 (N.Y. 2014); *see Tower Ins. Co. of New York v. NHT Owners LLC*, 90 A.D.3d 532, 533 (1st Dep't 2011) (33-day delay unreasonable as a matter of law where sole ground for disclaimer was readily apparent from notice of claim); *Pav-Lak Indus., Inc. v. Arch Ins. Co.*, 56 A.D.3d 287, 287–88 (1st Dep't 2008) (45-day delay unreasonable as a matter of law where "[t]here was no need for an investigation, because the basis for the disclaimer was readily apparent from [the] tender letter");

*Milbank Hous. Dev. Fund v. Royal Indem. Co.*, 17 A.D.3d 280, 280–81 (1st Dep't 2005) (same for 60-day delay); *W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*, 290 A.D.2d 278, 279 (1st Dep't 2002) (30–day delay in disclaiming coverage was unreasonable as a matter of law when sole ground for disclaimer obvious face of the notice of claim).

Here, the sole ground for Defendant's disclaimer—that the underlying complaint alleged dram shop violations and the Policy did not include liquor liability coverage— was "readily ascertainable from the face of the complaint in the underlying action." *Vargas v. City of New York*, 158 A.D.3d 523, 526 (1st Dep't 2018) (concluding that the insurer "did not need to investigate to conclude that the lead exclusion formed a basis for disclaiming" when "the third-party complaint sa[id] that the plaintiff in the underlying personal injury action alleged that he was exposed to lead dust"). To be sure, New York courts have found "short, explained delays . . . to be reasonable as a matter of law." *State Farm Mut. Auto. Ins. Co. v. Daniels*, 269 A.D.2d 860, 861 (4th Dep't 2000). The question here is whether the Court may determine that Defendant's *unexplained and unexcused* seven-day delay was timely as a matter of law.[8] In light of the very short duration between Defendant's receipt of the underlying complaint and issuance of its disclaimer, the Court concludes that QBE's disclaimer was timely as a matter of law. *See 2540 Assocs., Inc. v. Assicurazioni Generali, S.p.A.*, 271 A.D.2d 282, 284 (1st Dep't 2000) ("[T]he notice of disclaimer was issued one week after receipt of the investigator's

---

[8] Defendant's disclaimer was not untimely as a matter of law, nor does Plaintiff argue that it was. *See Temple Const. Corp. v. Sirius Am. Ins. Co.*, 40 A.D.3d 1109, 1112 (2d Dep't 2007) (insurer's eight-day delay in disclaiming from the time it was first notified of the occurrence could not be deemed unreasonable as a matter of law).

final report, and Associates has offered no authority suggesting that the passage of one week presents any issue of timeliness to require submission of the issue to a trier of fact."); *Maxum Indem. Co. v. VLK Constr., Inc.*, No. 14CV1616RRMLB, 2016 WL 4703654, at *5 (E.D.N.Y. Sept. 8, 2016) (disclaimer sent eight days after the insurer was informed of the underlying action was reasonable as a matter of law); *Ciampa Ests., LLC v. Tower Ins. Co. of New York*, 84 A.D.3d 511, 512 (1st Dep't 2011) (disclaimer sent within six days of receiving a notice of claim was timely as a matter of law); *Huguens v. Vill. of Spring Valley*, 82 A.D.3d 1159, 1160 (2d Dep't 2011) (disclaimer sent "only eight days after the conclusion of [the insurer's] investigation" was timely as a matter of law); *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 08CIV.7745(WHP), 2010 WL 2399558, at *9 (S.D.N.Y. June 14, 2010), *aff'd,* 421 F. App'x 52 (2d Cir. 2011) (delay of five days reasonable as a matter of law); *Hyperion Med. P.C. v. Trinet HR III, Inc.*, 190 A.D.3d 456, 457 (1st Dep't 2021) (disclaimer timely as a matter of law when insurer "provided a written disclaimer less than a week after being notified of the lawsuit"); *see also Steinberg v. Hermitage Ins. Co.*, 26 A.D.3d 426, 427 (2d Dep't 2006) (disclaimer on ground of late notice sent four weeks after insurer received a copy of the underlying summons and complaint was timely as a matter of law); *Travelers Ins. Co. v. Volmar Const. Co.*, 300 A.D.2d 40, 45 (1st Dep't 2002) (disclaimer sent 14 days after receiving demand for defense and indemnification was timely as a matter of law); *Nationwide Ins. Co. v. Lukas*, 264 A.D.2d 778, 779 (2d Dep't 1999) (disclaimer sent approximately 20 days after insurer possessed sufficient facts upon which to base its disclaimer was timely as a matter of law).

## CONCLUSION

In sum, the Court concludes that Liquor Liability Exclusion bars coverage for Plaintiff's claims in the underlying action. Defendant's disclaimer was both sufficiently specific and timely as a matter of law under § 3420(d)(2). Accordingly, the Court recommends that Defendant's motion for judgment on pleadings (Dkt. 9) be converted to a motion for summary judgment and that summary judgment be GRANTED in favor of Defendant.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.**

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **August 10, 2023**
               **Buffalo, New York**

                                            */s H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**